The Honorable John C. Coughenour

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DR. A. CEMAL EKIN, individually and on behalf of similarly situated individuals,<br><br>     Plaintiff,<br><br>  v.<br><br>AMAZON SERVICES LLC, a Nevada limited liability company,<br><br>     Defendant. | No. C14-0244 JCC<br><br>**AMAZON'S MOTION TO COMPEL ARBITRATION**<br><br>NOTE ON MOTION CALENDAR: August 29, 2014<br><br>Oral Argument Requested |

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................... 1

II.  BACKGROUND .................................................................................. 2

     A.   Amazon Prime. ......................................................................... 2

     B.   The Amazon Prime Terms & Conditions and Amazon.com's
          Conditions of Use. ................................................................... 2

     C.   Plaintiffs Accepted the COUs and the Arbitration Agreement. ...................... 3

     D.   The Arbitration Agreement. ........................................................... 5

     E.   Plaintiffs' Claims and the Putative Class. ........................................ 6

III. ARGUMENT .................................................................................... 7

     A.   The FAA Requires the Court to Respect and Enforce Arbitration
          Agreements According to Their Terms. ................................................ 7

     B.   Plaintiffs Agreed to Arbitration. ................................................... 9

     C.   Plaintiffs' Claims Are Within the Scope of the Arbitration
          Agreement. .......................................................................... 11

     D.   The Arbitration Agreement and Class Action Waiver Are
          Enforceable. ........................................................................ 15

     E.   The Court Should Compel Arbitration and Stay This Action. .......................... 17

IV.  CONCLUSION ................................................................................. 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1
2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Federal Cases**

5

*Adams v. AT&T Mobility, LLC*,
   816 F. Supp. 2d 1077 (W.D. Wash. 2011) ....................................................................16

6
7

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013)........................................................................................................8

8
9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 321, 131 S. Ct. 1740 (2011) ................................................................. *passim*

10

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................................................................3

11
12

*Boice v. A.G. Edwards & Sons, Inc.*,
   1988 WL 97966 (E.D. La. Sept. 9, 1988).......................................................................14

13
14

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
   622 F.3d 996 (2010) ............................................................................................................9

15
16

*Britton v. Co-op Banking Grp.*,
   4 F.3d 742 (9th Cir. 1993) ...............................................................................................12

17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ....................................................................................8, 12

18
19

*Coneff v. AT&T Corp.*,
   673 F.3d 1155 (9th Cir. 2012) ................................................................................7, 8, 16

20
21

*Coppock v. Citigroup, Inc.*,
   2013 WL 1192632 (W.D. Wash. Mar. 22, 2013)...............................................11, 12, 16

22

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985).............................................................................................................9

23
24

*Doe v. Project Fair Bid Inc.*,
   2011 WL 3516073 (W.D. Wash. Aug. 11, 2011).............................................................10

25
26

*Douglas v. Timex Corp.*,
   1998 WL 34072739 (S.D. Tex. Dec. 30, 1998)................................................................13

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Drews Distrib., Inc. v. Silicon Gaming, Inc.*,
  245 F.3d 347 (4th Cir. 2001) .................................................................13

*Energy Factors Inc. v. Nuevo Energy Co.*,
  1992 WL 110541 (S.D.N.Y. Apr. 29, 1992) ..........................................13

*Ferguson v. Corinthian Colls., Inc.*,
  733 F.3d 928 (9th Cir. 2013) ...................................................................8

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)..................................................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)....................................................................................7

*Gray v. Suttell & Assocs.*,
  2012 WL 1951657 (E.D. Wash. Mar. 19, 2012) ....................................16

*Hauenstein v. Softwrap Ltd.*,
  2007 WL 2404624 (W.D. Wash. Aug. 17, 2007)...............................10, 17

*Huff v. Liberty League Int'l, LLC*,
  2009 WL 1033788 (C.D. Cal. Apr. 4, 2009) ..........................................10

*In re Currency Conversion Fee Antitrust Litig.*,
  265 F. Supp. 2d 385 (S.D.N.Y. 2003) .....................................................13

*In re Verisign, Inc. Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007).....................................................13

*Kilgore v. Keybank, Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) (en banc) ...............................................7, 9

*KPMG LLP v. Cocchi*,
  132 S. Ct. 23 (2011) (per curiam)..............................................................7

*Kristian v. Comcast Corp.*,
  446 F.3d 25 (1st Cir. 2006)......................................................................13

*Kutner v. Emeritus Corp.*,
  2012 WL 6049648 (D. Ariz. Dec. 5, 2012) ............................................13

*Levin v. Alms & Assoc. Inc.*,
  634 F.3d 260 (4th Cir. 2011) ...................................................................13

*Marmet Health Care Ctr., Inc. v. Brown*,
  132 S. Ct. 1201 (2012) (per curiam).........................................................8

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — iii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Melendez v. Hoque & Mumith, Inc.*,
    2012 WL 2595268 (N.D. Tex. July 3, 2012)....................................................13

*Mortensen v. Bresnan Commc'ns, LLC*,
    722 F.3d 1151 (9th Cir. 2013) .............................................................. 8, 16, 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..............................................................................................7, 11

*Ortiz v. Winona Mem'l Hosp.*,
    2003 WL 21696524 (S.D. Ind. June 4, 2003).................................................13

*Peters v. Amazon Servs. LLC*,
    — F. Supp. 2d —, 2013 WL 7872692 (W.D. Wash. Nov. 5, 2013) ...................... *passim*

*Preston v. Ferrer*,
    552 U.S. 346 (2008)..............................................................................................7

*R.M. Perez & Assocs., Inc. v. Welch*,
    960 F.2d 534, 539 (5th Cir. 1992) ..................................................................13

*Riensche v. Cingular Wireless LLC*,
    2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) ...........................................10

*Segal v. Amazon.com, Inc.*,
    763 F. Supp. 2d 1367 (S.D. Fla. 2011) ...........................................................10

*Shotto v. Laub*,
    632 F. Supp. 516 (D. Md. 1986)......................................................................14

*Signavong v. Volt Mgmt. Corp.*,
    2007 WL 1813845 (W.D. Wash. June 21, 2007) ...........................................17

*Simonoff v. Expedia, Inc.*,
    643 F.3d 1202 (9th Cir. 2011) ........................................................................10

*Simpson v. Inter-Con Sec. Sys., Inc.*,
    2013 WL 1966145 (W.D. Wash. May 10, 2013) ...................................... 16, 17

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ..........................................................................12

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011)............................................................10

*TradeComet.com v. Google, Inc.*,
    435 F. App'x 31 (2d Cir. 2011) .......................................................................13

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — iv

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Tuminello* v. *Richards*,
    2012 WL 750305 (W.D. Wash. Mar. 8, 2012)................................................................11

*United States v. Drew*,
    259 F.R.D. 449 (C.D. Cal. 2009)................................................................10

*Vallejo v. Garda CL Sw., Inc.*,
    2013 WL 391163 (S.D. Tex. Jan. 30, 2013)................................................................13

*Whisler v. H.J. Meyers & Co., Inc.*, 948 F. Supp. 798 (N.D. Ill. 1996)................................15

*Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
    13 F.3d 330 (10th Cir. 1993) ................................................................13

**State Cases**

*Forrest v. Verizon Commc'ns, Inc.*,
    805 A.2d 1007 (D.C. 2002) ................................................................10

*M.A. Mortenson Co. v. Timberline Software Corp.*,
    140 Wn.2d 568, 998 P.2d 305 (2000)................................................................10

*Tjart v. Smith*,
    107 Wn. App. 885, 28 P.3d 823 (2001)................................................................17

*Yakima Cnty. Fire Prot. Dist. No. 12 v. City of Yakima*,
    122 Wn.2d 371, 858 P.2d 245 (1993)................................................................17

*Zuver v. Airtouch Commc'ns*,
    153 Wn.2d 293, 103 P.3d 753 (2004)................................................................16

**Federal Statutes**

9 U.S.C. § 2 ................................................................7

9 U.S.C. § 3 ................................................................1, 17

9 U.S.C. § 1. ................................................................ *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6). ................................................................ *passim*

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — v

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTION[1]

This action challenges Amazon's popular Prime program.  During the period covered by Plaintiffs' claims, Amazon Prime members received free two-day shipping and discounted one-day shipping on millions of eligible products for a $79 annual fee.  Between them, Plaintiffs have used Amazon Prime to receive free two-day shipping on hundreds of purchased items.  Ms. Burke has been a Prime member since February 15, 2010, renewed her membership a week after filing suit, and uses its shipping benefits to this day.  Dr. Ekin cancelled his Amazon Prime membership in November 2010 (and received a full refund), but then signed up twice more for free memberships in 2012 and 2013.

Since August 2011, Amazon's Conditions of Use ("COUs") have required individual arbitration of all claims and precluded class claims.  When Dr. Ekin signed up for Amazon Prime in 2012 and 2013, he accepted the COUs and the arbitration agreement.  Likewise, he and Ms. Burke agreed to arbitration scores of times in making purchases on Amazon.com after August 2011—each time clicking a button assenting to the COUs.  Plaintiffs even accepted the arbitration agreement *after* their disputes arose and they filed their complaints in this action.  The agreement is a broad "all disputes" provision, requiring arbitration of all claims "relating in any way to" Amazon services or products purchased through Amazon.com.  It plainly encompasses Plaintiffs' claims here.

Since the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 321, 131 S. Ct. 1740 (2011), it is well-established that agreements calling for individual arbitration and precluding class claims are valid and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*  Both Plaintiffs are subject to a valid arbitration agreement, and their claims fall within its scope.  The Court should compel arbitration and stay all proceedings in this action.  9 U.S.C. § 3.

---

[1] This is the second of three motions Amazon Services LLC ("Amazon") brings in response to Plaintiffs' claims.  The others are Amazon's Motion to Dismiss Under Rule 12(b)(1) for lack of standing and its Motion to Dismiss Under Rule 12(b)(6).

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## II.   BACKGROUND

### A.   Amazon Prime.

Amazon launched Amazon Prime in 2005, and it has grown and expanded since. Declaration of Karen Ressmeyer ("Ressmeyer Decl.") ¶ 2.  In the time period about which Plaintiffs complain (October 24, 2007 through February 22, 2011, *see* First Amended Complaint ("FAC") ¶ 5.1 (Dkt. No. 5)), Prime members received free two-day shipping, discounted one-day shipping, and weekend shipping options on millions of eligible products, for a $79 annual fee.  Ressmeyer Decl.  ¶ 2 & Exs. A-B.[2]  Products eligible for Prime are those sold by Amazon itself or by third-party merchants participating in the Fulfillment by Amazon ("FBA") program.  Declaration of Karen Haberkorn ("Haberkorn Decl.") ¶ 3.[3]

Amazon offers free trial periods for Prime ranging from thirty days to three months. Ressmeyer Decl. ¶ 4.  Customers may cancel their membership for any reason in the trial period, and those who choose to continue are charged the annual fee at the end of the trial. *Id.*  Prime membership renews each year and continues until a customer cancels.  *See id.* & Exs. A-B.  If the customer cancels the membership before using any Prime benefits, during any particular membership period, from Amazon or from an FBA seller, Amazon provides a full refund of the annual membership fee for that membership period.  *Id.* ¶ 4.

### B.   The Amazon Prime Terms & Conditions and Amazon.com's Conditions of Use.

Customers signing up for Amazon Prime must accept and agree to the Amazon Prime Terms & Conditions ("Prime Ts & Cs"), which incorporate Amazon.com's COUs.

---

[2] Amazon Prime has added other benefits since the time Plaintiffs allege their claims arose, including free streaming of over 40,000 movies and television episodes, free access to over 500,000 Kindle titles, and free streaming of over 1 million songs.  The annual fee has also changed from $79 to $99.  Ressmeyer Decl. ¶ 2.  Except as otherwise noted, this motion refers to Amazon Prime benefits as they existed in the period covered by Plaintiffs' claims.

[3] Sellers in the FBA program store their products in Amazon's fulfillment centers, and Amazon picks, packs and ships the products, and provides associated customer service.  Haberkorn Decl. ¶ 2.  The FBA program is discussed in more detail in Amazon's 12(b)(1) and 12(b)(6) motions.

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Plaintiffs acknowledge this, *see* FAC ¶ 2.2, although they quote an outdated version of the COUs.  Since August 19, 2011, the COUs have contained an arbitration agreement. Ressmeyer Decl. ¶¶ 7-8 & Ex. F.  Customers signing up for Amazon Prime must accept the Prime Ts & Cs by clicking a button next to text stating that, by doing so, "you acknowledge that you have read and agree to the Amazon Prime Terms and Conditions."  *Id.* ¶ 5 & Ex. C.[4]  The blue text is a hyperlink to the Prime Ts & Cs, allowing customers to review the contract terms before deciding whether to accept them and become Prime members.  *Id.*[5]

Customers also accept the COUs—and since August 19, 2011, the arbitration agreement—when making purchases using the standard checkout page on the Amazon.com website.  On that page, customers click a button accompanied by text explaining that "By placing your order, you agree to Amazon.com's privacy notice and conditions of use."  *Id.* ¶ 6, Ex. D. Here again, the blue text denotes hyperlinks to the full contract terms.

## C. Plaintiffs Accepted the COUs and the Arbitration Agreement.

Dr. Ekin has been an Amazon customer since August 3, 1997.  Haberkorn Decl. ¶ 10.  He alleges that "[f]rom December 2008 through December 2010, [he] was an Amazon Prime Program Member and paid the annual membership fee of $79 to Amazon." FAC ¶ 3.6.  In fact, Dr. Ekin first signed up for Amazon Prime in January 2006, but cancelled one day after the trial period ended and received a full refund of the $79 fee. Haberkorn Decl. ¶ 10.  He signed up again on December 5, 2008, and continued that membership for twenty-three months.  *Id.* ¶¶ 11-12.  On November 8, 2010, he contacted Amazon customer service, asking to cancel and seeking a refund of the $79 fee he had paid

---

[4] The full text immediately below the signup button reads:  "By clicking the button above, you acknowledge that you have read and agree to the Amazon Prime Terms and Conditions and authorize us to charge your card or another available card on file.  Your Amazon membership continues until cancelled. If you do not wish to continue for $99/year plus any applicable taxes, you may cancel anytime by visiting Your Account and adjusting your membership settings." Ressmeyer Decl. Ex. C.

[5] On the Amazon website, hyperlinks appear in blue text; in this brief, hyperlinks within quoted text are shown in underlined blue text.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

eleven months earlier.  *Id.* ¶ 12.  Although he was not entitled to a refund (because he had used Prime shipping benefits for 40 items), Amazon gave him one as a courtesy.  *Id.*[6]

Dr. Ekin accepted the arbitration agreement numerous times.  He again signed up for Amazon Prime two more times, on June 8, 2012 and July 14, 2013.  *Id.* ¶ 13.  Each time, he took advantage of the free 30-day trial, used the two-day shipping benefits, and cancelled at the end of the trial.  *Id.*  He also accepted the Prime Ts & Cs, the COUs and the arbitration agreement each time, by clicking the button on the signup page (as described above); he could not have signed up without doing so.  Ressmeyer Decl. ¶¶ 3, 5.  Dr. Ekin also accepted the COUs and the arbitration agreement by making purchases on Amazon.com after August 2011 and clicking the button on the checkout page (as described above).  Dr. Ekin purchased 116 items in 96 transactions through Amazon.com during this time.  Haberkorn Decl. ¶ 14. Indeed, he has accepted the COUs and the arbitration agreement this way nine times since filing his complaint.  *Id.*

Ms. Burke has been an Amazon customer since November 1999.  *Id.* ¶ 15.  She alleges she became a Prime member sometime before January 11, 2010, and used the "'free shipping' service at least eighteen times … through December 14, 2010."  Complaint, *Burke v. Amazon Servs. LLC*, No. 2:14-cv-335 ("Burke Compl."), ¶ 6 (Dkt. No. 1).  In fact, Ms. Burke first signed up for Amazon Prime on February 24, 2007, and continued her membership until April 16, 2008, when she cancelled and received a refund of the $79 fee.  Haberkorn Decl. ¶ 15.  (Ms. Burke also did not qualify for a refund, but Amazon still provided one.  *Id.*).

Ms. Burke signed up for Amazon Prime again in February 2010 and has renewed her membership ever since, most recently on March 15, 2014, a week after filing her complaint.  *Id.* ¶ 16.  Like Dr. Ekin, Ms. Burke accepted the COUs and the arbitration

---

[6] As noted in the accompanying 12(b)(1) Motion, during 2009—the only year Dr. Ekin paid for Amazon Prime membership—he did not make any Prime-eligible purchases from FBA sellers, although he did receive free two-day shipping for products he purchased from Amazon.  *See* 12(b)(1) Motion, at Part III.C.

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

agreement many times by buying products on Amazon.com and clicking the button on the

checkout page indicating she "agree[d] to Amazon.com's … conditions of use."

Ressmeyer Decl. ¶ 5 & Ex. C.  Indeed, since August 2011, Ms. Burke has purchased 555

items in nearly 230 transactions; of these, 95 transactions (315 items) were Prime

purchases.  Ms. Burke also accepted the COUs and the arbitration agreement 36 times in

making purchases after she filed her complaint.  Haberkorn Decl. ¶ 18.

### D.       The Arbitration Agreement.

In repeatedly accepting the COUs, Dr. Ekin and Ms. Burke agreed to resolve "any

dispute" with Amazon through arbitration or small claims court:

> **Any dispute or claim relating in any way to your use of any Amazon
> Service, or to any products or services sold or distributed by Amazon or
> through Amazon.com will be resolved by binding arbitration, rather
> than in court**, except that you may assert claims in small claims court if your
> claims qualify.

Ressmeyer Decl. Ex. E.[7]  Plaintiffs (like all Amazon customers) retain the same substantive

rights and can obtain the same relief on an individual basis in arbitration as they can in

court:

> **There is no judge or jury in arbitration, and court review of an
> arbitration award is limited.  However, an arbitrator can award on an
> individual basis the same damages and relief as a court (including
> injunctive and declaratory relief or statutory damages)** …

*Id.* (emphasis in original).

The agreement provides an inexpensive, efficient and fair mechanism for customers

to resolve disputes.  Amazon agrees to pay all arbitrator fees and costs for claims under

$10,000 and to unilaterally waive its claims for attorneys' fees (unless the arbitrator finds

the claims frivolous).  *Id.*  Arbitrations are conducted by the American Arbitration

---

[7] In the complaint, Plaintiffs apparently refer to a venue provision from an old version of the COUs, which provided for cases asserting claims of more than $7,500 to be "adjudicated in any state or federal court in King County, Washington." FAC ¶ 2.2.  Plaintiffs do not identify the agreement they cite nor attach it to the complaint, but, regardless, the versions of the COUs and the Prime Ts & Cs applicable to each Plaintiff are different, as shown above.

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — 5

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Association pursuant to its rules, including those concerning consumer-related disputes. *Id.* Thus, Dr. Ekin can choose that arbitration be conducted in person in Rhode Island, where he lives, *see* FAC ¶ 1.1, and Ms. Burke can arbitrate in her hometown of Tuscaloosa, Alabama, Burke Compl. ¶ 6. Either can also choose another convenient location or to arbitrate by telephone or based on written submissions. Ressmeyer Decl. Ex. E. Whatever the location or format, neither Plaintiff would pay arbitration costs, given that they apparently are seeking $79 each.

Consistent with the aim of providing efficient and economical dispute resolution, the arbitration agreement provides and both Plaintiffs agreed not to pursue class claims:

> **We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.**

*Id.* (emphasis in original). The agreement also provides that any disputes will be governed by the Federal Arbitration Act ("FAA") and associated federal law, and the laws of the State of Washington (Amazon's principal place of business). *Id.*

### E. Plaintiffs' Claims and the Putative Class.

Plaintiffs claim Amazon promised "free shipping" to Amazon Prime members and that "shipping charges would not be included in the prices of items offered for sale as Prime Eligible." *See* FAC ¶¶ 3.1, 3.2. They further allege Amazon somehow "induced" or "advised" FBA sellers "to include the amount they would have charged for shipping in their item prices." *Id.* ¶¶ 3.4, 3.7. Plaintiffs nowhere claim that they did *not* receive free two-day shipping for any Prime-eligible products. In fact, Dr. Ekin has used Prime two-day shipping to purchase at least 53 items, and Ms. Burke has used it to purchase over 300 items to date. Haberkorn Decl. ¶¶ 12-13, 17-18. Nor do Plaintiffs allege that they bought any product from an FBA seller and paid more than they would have had they purchased it as a non-Prime member. Amazon addresses the flaws of Plaintiffs' conclusory allegations in its 12(b)(6) motion. Here, it is sufficient to note that Plaintiffs assert claims for breach of contract, FAC ¶¶ 6.1-6.3, and under the Washington Consumer Protection Act ("CPA"),

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

RCW ch. 19.86, *see* FAC ¶¶ 7.1-7.3.  Plaintiffs seek to represent a class of "[a]ll persons and entities residing in the United States who became Amazon Prime members at any time from October 24, 2007 until February 22, 2011, and paid one or more $79 annual Prime membership fees during the Class Period."  FAC ¶ 5.1.

### III.    ARGUMENT

**A.    The FAA Requires the Court to Respect and Enforce Arbitration Agreements According to Their Terms.**

The FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration agreements."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution," *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 631, (1985)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements ...."), and its "principal purpose … is to ensure that private arbitration agreements are enforced according to their terms," *Concepcion*, 131 S. Ct. at 1748 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989)).  As the Supreme Court has repeatedly emphasized, this "national policy favoring arbitration" supersedes "state [law] attempts to undercut the enforceability of arbitration agreements."  *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 16 (1984)).

In recent years, "the Supreme Court [has] given broad effect to arbitration agreements," *Kilgore v. Keybank, N. A.*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc); *see also Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 (9th Cir. 2012) ("*Concepcion* is broadly written."), and the Court has repeatedly rejected attempts to avoid arbitration agreements. In *Concepcion*, the Court held the FAA preempted a California rule refusing to enforce

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — 7

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

arbitration agreements containing class action waivers on grounds of unconscionability. 131 S. Ct. at 1753.  In *Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201, 1203-04 (2012) (per curiam), the Court "put an exclamation point" on *Concepcion* in holding that a West Virginia rule refusing to enforce arbitration agreements for personal injury or wrongful death claims against nursing homes was both "incorrect and inconsistent with clear instruction" in the Court's precedent and plainly preempted by the FAA.  *See Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013).  In *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct.  2304 (2013), the Court rejected plaintiffs' efforts to pursue class antitrust claims on the theory that they could not effectively vindicate statutory rights in arbitration, finding there was no "entitlement to class proceedings for the vindication of statutory rights," and no "contrary congressional command" in the antitrust laws to override the FAA.  *Id.* at 2309-10.

The Ninth Circuit has steadfastly followed this precedent.  In *Coneff,* the court held the FAA preempted Washington's version of the California rule struck down in *Concepcion*.  673 F.3d at 1160-61.  In *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013), the court applied *American Express* to reject a California rule which had held that arbitration agreements were invalid as to representative claims for public injunctive relief.  More recently, in *Mortensen*, 722 F.3d at 1160, the Ninth Circuit struck down a judicially created Montana rule refusing to enforce arbitration agreements in adhesion contracts as contrary to the "reasonable expectations" of the parties, noting that after *Concepcion*, the "FAA's purpose is to give preference (instead of mere equality) to arbitration provisions."  *Id.*  Put simply, "the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims."  *Id.* (quoting *Italian Colors*, 133 S. Ct. at 2312 n.5).

The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists and (2) the dispute falls within the scope of that agreement.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  When both elements are met, as

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — 8

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

here, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *accord Kilgore*, 718 F.3d at 1058.

### B.    Plaintiffs Agreed to Arbitration.

"In the Ninth Circuit, 'the most minimal indication of the parties' intent to arbitrate must be given full effect.'" *Peters v. Amazon Servs. LLC*, — F. Supp. 2d —, 2013 WL 7872692, at *3 (W.D. Wash. Nov. 5, 2013) (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991)).  "It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability,' particularly where the clause is broad." *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).  The party seeking arbitration bears the initial burden of showing a valid arbitration agreement exists by a preponderance of the evidence, while a party opposing arbitration bears the burden of proving facts necessary to its defense. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (2010).  In determining whether parties agreed to arbitrate, "courts … apply ordinary state-law principles that govern the formation of contracts," *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), here, Washington law.   *See* FAC ¶ 4.1, Ressmeyer Decl. ¶¶ 7-8 & Exs. E-F (COUs require application of the FAA and Washington law).

As discussed above, Plaintiffs (like other Amazon customers) accepted the arbitration agreement in signing up and making purchases online, by clicking buttons indicating they had "read and agree[d] to the Amazon Prime Terms and Conditions" and "agree[d] to Amazon's conditions of use," respectively.  *See* Ressmeyer Decl. ¶ 5 & Ex. C. Plaintiffs concede this online acceptance creates a binding contract—indeed, they assert breach of contract claims based on such acceptance.  *See* FAC ¶¶ 2.2, 5.4, 6.2.  They could hardly contend otherwise, as it is by now well-established that "click-wrap" agreements such as this are enforceable like any other contract.  *Peters*, 2013 WL 7872692, at *2, 4

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — 9

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

(enforcing Amazon's clickwrap agreements with sellers and compelling arbitration); *Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011) ("Because Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button … a binding contract was created here."); *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009) (collecting cases, noting "[c]lickwrap agreements have been routinely upheld by … courts").[8]

Plaintiffs ignore that they entered into the Prime Ts & Cs and the COUs not just once but numerous times, and each time accepted the versions of the agreements then in effect. Thus, when Dr. Ekin signed up for Amazon Prime in June 2012 and July 2013, he accepted the Prime Ts & Cs and the COUs that included the arbitration agreement. When each Plaintiff made scores of purchases on Amazon.com after August 2011 and accepted the extant COUs by clicking the button on the checkout page (over 90 times in Dr. Ekin's case and over 150 times for Ms. Burke, *see* Haberkorn Decl. ¶¶ 14, 18), they again accepted the arbitration agreement. Rather obviously, Plaintiffs attempt to cabin their claims to the 2007-2011 period to avoid the arbitration agreement. *See* Simmonds Decl. ¶ 4 (noting Dr.

---

[8] Many other cases are to the same effect. *See, e.g.*, *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *2-3, 6 (W.D. Wash. Aug. 17, 2007) (enforcing arbitration agreement because plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box"); *Riensche v. Cingular Wireless LLC*, 2006 WL 3827477, at *2 (W.D. Wash. Dec. 27, 2006) (compelling arbitration where plaintiff "was required to agree to the Terms online" before using defendant's services); *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 584, 998 P.2d 305 (2000) (holding consumer accepted license by using software after receiving notice of its terms and conditions). *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011) (enforcing online user agreement); *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (enforcing Amazon.com's terms because "clickwrap agreements are valid and enforceable contracts" (citation omitted)); *Huff v. Liberty League Int'l, LLC*, 2009 WL 1033788, at *8 (C.D. Cal. Apr. 4, 2009) ("courts across the country have enforced so-called 'clicking agreements' that contain arbitration clauses"); *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1011 (D.C. 2002) ("A contract is no less a contract simply because it is entered into via a computer.").

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Ekin's counsel read the briefs, attended the hearing, and analyzed Judge Pechman's decision compelling arbitration in *Peters*). But whatever the motivation of Plaintiffs or their counsel, they cannot disregard that they expressly agreed to arbitration many, many times. And, as shown in the next section, the agreement they accepted plainly covers their claims here.

### C.  Plaintiffs' Claims Are Within the Scope of the Arbitration Agreement.

In determining whether Plaintiffs' claims fall within the scope of the arbitration agreement, the FAA mandates a strong presumption in favor of arbitrability. As this Court recently wrote:

> "[A]n order to arbitrate … should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. *AT&T Techs., Inc.* [475 U.S. at 650]. "In the absence of any express provision excluding a particular grievance from arbitration, … only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail…." [*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960).]

*Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *5 (W.D. Wash. Mar. 22, 2013) (other internal citations omitted); *accord Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" including "construction of the contract language itself"); *Tuminello* v. *Richards*, 2012 WL 750305, at *2 (W.D. Wash. Mar. 8, 2012) ("the FAA divests courts of their discretion and requires courts to resolve any doubts in favor of compelling arbitration"); *Peters*, 2013 WL 7872692, at *6. Plaintiffs "bear[] the burden of showing that the agreement does not cover the claims at issue." *Coppock*, 2013 WL 1192632, at *5 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

Plaintiffs cannot meet their burden because their claims fall squarely within the arbitration agreement they accepted. The agreement requires individual arbitration of "**[a]ny dispute or claim relating in any way to** [a customer's] **use of any Amazon Service, or to any products or services sold or distributed by Amazon or through**

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

**Amazon.com** ….”  Ressmeyer Decl. ¶ 7 & Ex. E (emphasis in original).[9]  Amazon Services are all the “website features and other products and services” available to customers when they “visit or shop at Amazon.com, use Amazon products or services, use Amazon applications for mobile, or use software provided by Amazon ….”  *Id.*

Under Ninth Circuit precedent, such an “all disputes” clause creates a broad arbitration agreement.  *Chiron Corp.*, 207 F.3d at 1131 (provisions such as this are “far reaching” in scope, and “routinely used … to secure the broadest possible arbitration coverage”); *see also Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993).  Here, the agreement covers all disputes “relating in any way” to customer relationships or transactions through the Amazon.com website, and thus encompasses all claims whether or not they “arise under” the agreement.  *See Coppock*, 2013 WL 1192632, at *5-6 (a clause calling for arbitration of claims “relating to” a customer relationship is “broad arbitration clause language,” while a clause mandating arbitration of claims “arising under” a specific agreement is “narrower in scope” (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463-64 (9th Cir. 1083)).  Such clauses require arbitration of all disputes that “touch matters” covered by the parties’ contract.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

Plaintiffs’ claims plainly relate to Amazon Services (*i.e.,* the Amazon Prime service) and to “products or services sold or distributed by Amazon or through Amazon.com.”  The subject matter of Plaintiffs’ claims—*i.e.*, their allegations about prices they paid for Prime-eligible products—fall squarely within the subject matter of “any dispute or claim” for which arbitration is required.

---

[9] The wording of the arbitration agreement in the COUs has changed over time, but not in ways material to this motion.  The COUs dated August 19, 2011, for example, called for arbitration of “**[a]ny dispute or claim relating in any way to your visit to Amazon.com or to products or services sold or distributed by Amazon or through Amazon.com.**”  Ressmeyer Decl. Ex. F (emphasis in original).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

The arbitration agreement also encompasses Plaintiffs' present claims about Amazon Prime for the period from October 2007 to February 2011, notwithstanding that Amazon's COUs did not include an arbitration agreement then.  As numerous courts have recognized, broad agreements containing language such as "relating to any dispute" require arbitration of both future disputes and past disputes.  *See Levin v. Alms & Assoc. Inc.*, 634 F.3d 260, 267-68 (4th Cir. 2011) ("courts have generally applied broad 'any dispute' language retroactively, especially when combined with language that refers to all dealings between the parties"); *TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34-35 (2d Cir. 2011) ("courts have found claims arising from or related to conduct occurring before the effective date of an arbitration clause to be *within* the scope of a clause that is not limited to claims arising under the agreement itself" (emphasis in original) (internal quotation omitted)); *Kristian v. Comcast Corp.*, 446 F.3d 25, 33 (1st Cir. 2006) (arbitration agreement applying to any claims "relating to or arising out of this agreement or the services provided" applied retroactively because "the phrase 'or the services provided' … [is] not limited by the time frame of the agreements"); *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001) (arbitration clause using "related to" language covered dispute arising out of earlier agreement between the parties that did not include arbitration provision); *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993) (arbitration agreement applying to "[a]ny controversy between [the parties] arising out of [plaintiff's] business" was "clearly broad enough to cover the dispute at issue despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the agreement").[10]

---

[10] Again, many other cases have reached the same conclusion.  *See, e.g.*, *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 539 (5th Cir. 1992); *Vallejo v. Garda CL Sw., Inc.*, 2013 WL 391163, at *9 (S.D. Tex. Jan. 30, 2013); *Kutner v. Emeritus Corp.*, 2012 WL 6049648, at *3 (D. Ariz. Dec. 5, 2012); *Melendez v. Hoque & Mumith, Inc.*, 2012 WL 2595268, at *3 (N.D. Tex. July 3, 2012); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 407 (S.D.N.Y. 2003); *Ortiz v. Winona Mem'l Hosp.*, 2003 WL 21696524, at *2 (S.D. Ind. June 4, 2003); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103–06 (C.D. Cal. 2002); *Douglas v. Timex Corp.*, 1998 WL 34072739, at *4 (S.D. Tex. Dec. 30, 1998); *Energy Factors Inc. v. Nuevo Energy Co.*, 1992 WL 110541, at *2 (S.D.N.Y. Apr.

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — 13

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

These cases follow the FAA's overarching purpose that arbitration agreements must be "enforced according to their terms." *Concepcion*, 131 S. Ct. at 1748 (quoting *Volt*, 489 U.S. at 478). Parties may choose arbitration to resolve past disputes as well as future ones. When an arbitration agreement by its terms encompasses past dealings—as the arbitration provision in the Amazon.com COUs does—the Court must enforce those terms.

Judge Pechman recently addressed this issue in *Peters*, compelling arbitration under Amazon's arbitration agreement. In that case, two third-party sellers brought a putative class action after Amazon terminated their selling privileges (respectively, for selling counterfeit goods and attempting to persuade other sellers to raise prices), claiming Amazon improperly delayed in disbursing funds after termination. 2013 WL 7872692, at *1-3. Both plaintiffs signed up to sell on Amazon.com through online agreements, *id.* at *2, just as Plaintiffs in this case accepted the COUs online. One of them (Mr. Lane) originally signed up in 2010 under an agreement that did not contain an arbitration provision, but later opened four additional seller accounts, each time accepting an agreement that did require arbitration. *Id.* at *2. Plaintiffs contended that "Mr. Lane's dispute falls outside of the scope of the arbitration provision because he executed that agreement only *after* the suspension of his first account," and his claims (all based on the suspension) should be governed by the agreement for that account, which did not contain an arbitration provision. *Id.* at *7. Judge Pechman found this argument "meritless." *Id.* Noting the "arbitration provision is broad, applying to *any* dispute between the parties," the Court held "[i]t is plainly not limited to prospective disputes." *Id.* (emphasis in original).

Moreover, "when Mr. Lane executed the [updated seller agreement] and agreed to arbitrate any dispute, he was already aware of the facts underlying this case including Amazon's alleged failure to timely remit buyer funds." *Id.* Judge Pechman noted cases holding that, given these circumstances especially, Mr. Lane was bound to the arbitration

29, 1992); *Boice v. A. G. Edwards & Sons, Inc.,* 1988 WL 97966, at *2 (E.D. La. Sept. 9, 1988); *Shotto v. Laub,* 632 F. Supp. 516, 522 (D. Md. 1986).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

agreement he accepted after his dispute arose. *Id.* (citing *Green v. W.R.M. & Assocs., Ltd.*, 174 F. Supp. 2d 459, 463 (N.D. Miss. 2001) (where plaintiff was "clearly aware of [the defendant's] past wrongdoing … at the time of signing the Arbitration Agreement" concerning "[a]ny dispute," "[t]his is consistent with the parties' intentions to give up their rights to sue in court for all of their potential claims, whether they occurred before or after signing of the agreement"); and *Whisler v. H.J. Meyers & Co., Inc.*, 948 F. Supp. 798, 801-02 (N.D. Ill. 1996) (rejecting plaintiffs' argument that arbitration agreement could not be applied to transactions prior to their signing of the account agreement, where agreement related to "any controversy arising out of or relating to any of my accounts," a statement that "speaks in terms of relationships and not timing") (internal quotations omitted)).

The result and reasoning of *Peters* apply equally here.  Both Plaintiffs agreed to arbitrate "[a]ny dispute or claim relating in any way" to Amazon services, their purchases of goods or services on the website, or their relationships with Amazon.  These terms are not limited to disputes that arise in the future, but also include past disputes.  Plaintiffs cannot avoid the express terms of the arbitration agreement they accepted so many times.

Also like *Peters*, both Dr. Ekin and Ms. Burke accepted the arbitration agreement many times *after* they knew of the claims they now assert.  Dr. Ekin wrote a blog post in 2010 asserting his contentions concerning Amazon Prime and shipping costs.  *See* Simmonds Decl. ¶ 4 (Dkt. No. 14) (Plaintiffs' counsel solicited Dr. Ekin to act as class plaintiff based on his August 14, 2010 post).  Since then, he has agreed to the arbitration provision over 90 times, including twice when he signed up for Amazon Prime again, and nine times after he filed his complaint.  Haberkorn Decl. ¶ 14.  Ms. Burke has accepted the arbitration agreement even more often, over 150 times, including 36 times after she filed her complaint.  *Id.* ¶ 18.  Having agreed to arbitration many times again *after their claims arose*, Plaintiffs cannot credibly claim they should be entitled to avoid it.

### D.     The Arbitration Agreement and Class Action Waiver Are Enforceable.

"Once a court establishes that a claim is within the scope of an arbitration

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

agreement, the agreement is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Simpson v. Inter-Con Sec. Sys., Inc.*, 2013 WL 1966145, at *2 (W.D. Wash. May 10, 2013) (quoting 9 U.S.C. § 2)). This is the FAA's "savings clause," which "preserves generally applicable contract defenses, such as fraud, duress, or unconscionability." *Mortensen*, 722 F.3d at 1158.  But Plaintiffs have no basis to avoid the arbitration agreement on these grounds.

First, Plaintiffs' obvious effort to avoid the class action waiver in the arbitration agreement is unavailing.  *Concepcion* sounded a "death knell for any application of state law that declares arbitration agreements unenforceable because they bar class actions and class arbitrations."  *Adams v. AT&T Mobility, LLC*, 816 F. Supp. 2d 1077, 1087 (W.D. Wash. 2011); *see also Gray v. Suttell & Assocs.*, 2012 WL 1951657, at *2 (E.D. Wash. Mar. 19, 2012) (after *Concepcion*, "an arbitration agreement with a class-action waiver is enforceable and not unconscionable").  Washington's prior rule finding class waivers in arbitration agreements unconscionable is expressly dead.  *Coneff*, 673 F.3d at 1159-60 (*Concepcion* "forecloses" the argument that class action waivers are unconscionable under Washington law); *Coppock*, 2013 WL 1192632, at *8 n.2 ("Under *Concepcion*, the Court cannot consider Washington's policy on unconscionability of class-action waivers— 'fundamental' or not, … since the FAA preempts that policy and precludes a court from taking it into account in conducting the unconscionability analysis.").

Plaintiffs have no other basis to avoid their agreement to arbitrate.  They cannot claim the arbitration agreement is procedurally unconscionable, as they each had a meaningful choice countless times to decide whether to sign up for and renew their Amazon Prime memberships and make purchases on Amazon.com.  *See Zuver v. Airtouch Commc'ns*, 153 Wn.2d 293, 304, 103 P.3d 753 (2004) ("[T]he key inquiry for … procedural unconscionability is whether [a party] lacked meaningful choice.").  The arbitration agreement was not "hidden in a maze of fine print," 153 Wn.2d at 304, but rather prominently featured in bolded type and easy-to-understand terms.  *See also*

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Signavong v. Volt Mgmt. Corp.*, 2007 WL 1813845, at \*3 (W.D. Wash. June 21, 2007); *Hauenstein*, 2007 WL 2404624, at \*4; *Simpson*, 2013 WL 1966145, at \*3.  Plaintiffs cannot claim anyone forced them to sign up for Amazon Prime or make purchases on Amazon.com, or that they were caught unawares when they accepted the COUs and the arbitration agreement.[11]

Nor can Plaintiffs claim the arbitration agreement is substantively unconscionable, *i.e.*, that it is so one-sided as to be "monstrously harsh" or "shocking to the conscience." *Hauenstein*, 2007 WL 2404624, at \*5 (quoting *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)).  The agreement allows Plaintiffs to recover the same relief on their individual claims as would be available in court, including statutory damages and attorneys' fees (while Amazon disclaims rights to seek fees, except for frivolous claims).  Ressmeyer Decl. Ex. E.  Plaintiffs can arbitrate their claims for free—they pay no arbitration costs or arbitrator fees for any claims up to $10,000—and can choose to arbitrate based on written submissions, in a telephonic hearing, or in person at a convenient location.  *Id.*  The agreement is also mutual—Amazon agrees to arbitrate its claims with Plaintiffs.  *Id.*  The arbitration agreement provides fair and efficient dispute resolution, which is what the FAA encourages in expressing a strong federal policy favoring arbitration.  *See Mortensen*, 722 F.3d at 1158 ("the FAA gives a strong boost to arbitration").

### E.     The Court Should Compel Arbitration and Stay This Action.

If a party seeks to compel arbitration and stay litigation under Section 3 of the FAA and the Court determines arbitration is appropriate, it has no discretion, but "shall" stay the action.  9 U.S.C. § 3.  This provision is designed to effectuate the FAA's policy favoring prompt arbitration without delays of intervening appeals.  *See id.* § 16 (allowing a one-way appellate right, *i.e.*, the party seeking to compel arbitration can appeal if a district court

---

[11] It also makes no difference whether either Plaintiff actually read the COUs or the arbitration agreement; the law conclusively presumes they did.  *Yakima Cnty. Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 389, 858 P.2d 245 (1993); *Signavong*, 2007 WL 1813845, at \*3; *Tjart v. Smith*, 107 Wn. App. 885, 896, 28 P.3d 823 (2001).

AMAZON'S MOTION TO COMPEL ARBITRATION
(C14-0244 JCC) — 17

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

denies the motion, but a party opposing arbitration cannot appeal if the court grants the motion).  Accordingly, the Court should compel Plaintiffs to arbitrate their claims and stay further proceedings in this case.

## IV.    CONCLUSION

For these reasons, Amazon respectfully requests that the Court stay this action in its entirety and direct Plaintiffs to submit their claims to binding arbitration on an individualized basis pursuant to the terms of their agreements with Amazon.

DATED this 24th day of July, 2014.

DAVIS WRIGHT TREMAINE LLP


By:  *s/ Rebecca Francis*
James C. Grant, WSBA #14358
Ambika K. Doran, WSBA #38237
Rebecca Francis, WSBA #41196
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: (206) 622-3150
Facsimile: (206) 757-7700
Email:  jamesgrant@dwt.com,
ambikadoran@dwt.com,
rebeccafrancis@dwt.com

*Attorneys for Amazon Services LLC*

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 24th day of July, 2014.

Davis Wright Tremaine LLP


By *s/ Rebecca Francis*
Rebecca Francis, WSBA #41196
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
Telephone:  (206) 757-8136
Fax:  (206) 757-7700
E-mail:  rebeccafrancis@dwt.com

*Attorneys for Amazon Services LLC*

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax