THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DR. A. CEMAL EKIN,
*Individually and on behalf of similarly situated individuals,*

                    Plaintiff,

          v.

AMAZON SERVICES, LLC,

                    Defendant.

CASE NO. C14-0244-JCC

ORDER GRANTING
DEFENDANT'S MOTION TO
COMPEL ARBITRATION

This matter comes before the Court on Defendant Amazon Services, LLC's (Amazon's) Motion to Compel Arbitration (Dkt. No. 24). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the Motion for the reasons explained herein.

I.     **BACKGROUND**

This suit arises from the operation of Amazon's Prime service.  From 2005 to February 2014, a period inclusive of the time period relevant to this suit, Amazon offered its Prime subscribers free two-day shipping, discounted one-day shipping, and weekend shipping on millions of eligible products, for a $79 annual fee.  (Ressmeyer Decl., Dkt. No. 25 at ¶2 & Ex. A-B.)  Prime eligible products are those that are sold by Amazon or that are sold by third-party merchants participating in the Fulfillment by Amazon (FBA) program.  (Haberkorn Decl., Dkt.

No. 26 at ¶3.)  Customers signing up for Amazon Prime must accept Amazon's Prime Terms and Conditions (T&Cs), by clicking a button next to text that states "you acknowledge that you have read and agree to the <u>Amazon Prime Terms and Conditions</u>," the underlined portion of this sentence providing a hyperlink that directs customers to the T&Cs.  (Motion to Compel Arbitration, Dkt. No. 24 at 2-3.)  These T&Cs incorporate Amazon's Conditions of Use (COU). (*Id.*)  Customers also accept the COU every time they make a purchase on Amazon.com; to make a purchase, customers must click a button next to text that says "by placing your order, you agree to Amazon.com's <u>privacy notice</u> and <u>conditions of use</u>," the underlined portions also bearing hyperlinks to the eponymous documents.  (*Id.*)

Since August 19, 2011, Amazon's COU have included a binding arbitration agreement. (*Id.*)

Both Plaintiff Dr. A. Cemal Ekin and Interested Party Ms. Marcia Burke have been Amazon Prime members since 2006 and 2007, respectively.  (Motion to Compel Arbitration, Dkt. No. 24 at 3-4.)  Although the arbitration agreement was not part of the COU to which the parties agreed when they initially joined Amazon, Plaintiffs have actively renewed[1] their Prime membership several times, both after the August 19, 2011 addition of the arbitration agreement to the COU, and after the filing of the Complaint in this suit.  (*Id.*)  Further, both Dr. Ekin and Ms. Burke agreed to the arbitration provision in the COU several times by purchasing 116 items and 555 items from Amazon, respectively, since August 2011, including after the filing of the Complaint.  (*Id.* at 4-5.)

Amazon's arbitration agreement provides that

Any dispute or claim *relating in any way* to your use of any Amazon
Service, or to any products or services sold or distributed by Amazon or

---

[1] It appears that Ms. Burke's renewals of her Prime membership occurred automatically, but that she did not endeavor to cancel this feature after filing the Complaint.  Dr. Ekin, it appears, actively re-signed up for Prime after canceling his membership, once in June 2012 and once in July 2013.  (Haberkorn Decl., Dkt. No. 26 at ¶13.)

ORDER GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION
PAGE - 2

through Amazon.com will be resolved by binding arbitration, rather than
in court. . . We [both Amazon and any customer] each agree that any
dispute resolution proceedings will be conducted only on an individual
basis and not in a class, consolidated, or representative action.

(*Id.* at 5-6 (emphasis added).)  In the arbitration agreement, Amazon agrees to pay all arbitrator

fees and costs for claims under $10,000 and to unilaterally waive its claims for attorneys' fees.

(*Id.*)  Arbitrations are conducted by the American Arbitration Association, pursuant to its rules

governing consumer-related disputes.  (*Id.* at 6.)  Customers may choose to arbitrate in their

hometowns, another convenient location, or may also arbitrate by telephone or through written

submissions.  (*Id.*)  The arbitration agreement also provides that any disputes are to be governed

by the Federal Arbitration Act (FAA), associated federal law, and the laws of Amazon's

principal place of business (Washington state).  (*Id.*)

   In February of 2014, Plaintiff filed a putative Rule 23(b)(3) class action suit, asserting

claims for breach of contract and violations of Washington's Consumer Protection Act,

stemming from what Dr. Ekin alleges was Amazon's practice of encouraging FBA-vendors to

increase the base cost of their products to recapture the revenue lost from providing free shipping

to Prime members.  (First Amended Complaint, Dkt. No. 5 at ¶¶3.4; 6.1-6.3; 7.1-7.3.)  The

putative class consists of all those persons and entities who became Amazon Prime members

between October 24, 2007 and February 22, 2011, the period before Amazon's arbitration

agreement became part of its COU.  (*Id.* at ¶5.1.)  Again, both the putative class representative,

Dr. Ekin, and interested party Ms. Burke renewed their Prime memberships several times and

purchased hundreds of items after the end of this class period and even after the filing of the

Complaint, each time agreeing to COU that, after August 2011, included the arbitration

agreement.[2]  Plaintiffs do not, in their discussion of commonality and predominance or in any

other section of the Amended Complaint, provide the Court with any idea of how many of the

putative class members likewise assented to the arbitration agreement *after* the relevant class

---

[2] *See* fn. 1, *supra.*

ORDER GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION
PAGE - 3

1    period.[3]

2    **II.     DISCUSSION**

3       **A.     Legal Standard**

4       Since the Supreme Court's seminal ruling in *AT&T Mobility LLC v. Concepcion*, 131 S.

5    Ct. 1740 (U.S. 2011), federal courts are limited in their discretion to disregard a valid agreement

6    to arbitrate.  In *Concepcion,* the Court affirmed the binding and state law-preempting nature of

7    the Federal Arbitration Act's Section 2, which provides that agreements to arbitrate are "valid,

8    irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

9    revocation of any contract."  9 U.S.C. § 2.

10      The Ninth Circuit has followed the precedent set by *Concepcion* and its progeny,[4]

11    repeatedly issuing opinions confirming that the FAA preempts state laws declaring certain

12    arbitration agreements to be unconscionable, and thus unenforceable.  For instance, in *Coneff v.*

13    *AT&T Corp.,* 673 F.3d 1155, 1160-61 (9th Cir. 2012), the Ninth Circuit held that the FAA

14    preempted Washington's version of the California rule that the Supreme Court struck down in

15    *Concepcion.*  And in *Ferguson v. Corinthian Colleges, Inc.,* 733 F.3d 928, 935 (9th Cir. 2013),

16    the Court relied on *Italian Colors* to strike down a California rule declaring arbitration

17    agreements per se invalid when they prevented the litigation of representative claims for public

18    injunctive relief.

19      Thus, this Court is firmly bound by the FAA in adjudicating this Motion.  The FAA

20    requires courts to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the

21    dispute falls within the scope of that agreement.  *Chiron Corp. v. Ortho Diagnostic Systems, Inc.,*

22    207 F.3d 1126, 1130 (9th Cir. 2000).  If both of these two prongs are fulfilled, then the FAA

23

24    ────────────────

25    [3] This would pose problems with regard to class certification, if the Court was not compelled by the FAA to order arbitration on this matter.

26    [4] Including, *inter alia, American Express Co. v. Italian Colors Restaurant,* 133 S. Ct. 2304 (2013); *Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201, 1203-04 (2012).

1   "leaves no place for the exercise of discretion by a district court, but instead mandates that

2   district courts *shall* direct the parties to proceed to arbitration." *Id.; see also Dean Witter*

3   *Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985); *Kilgore v. Keybank, N.A.,* 718 F.3d 1052, 1058

4   (9th Cir. 2013).

5          **B.**    **The Validity of Amazon's Arbitration Agreement**

6         Plaintiffs' main objection to the validity of the arbitration agreement[5] is that Amazon

7   expressly reserves the right to change, without notice, consent, or a refund, its Prime T&Cs and

8   general COU.  Plaintiffs claim that under prevailing Ninth Circuit case law, this makes the

9   arbitration agreement, which is incorporated into these COU, unenforceable due to

10   unconscionability (and the FAA strictures thus inapplicable, as per 9 U.S.C. § 2's savings

11   clause).  (Plaintiffs' Response to Amazon's Motion to Compel Arbitration, Dkt. No. 38 at 1.)

12   However, Plaintiffs' argument is unavailing for several reasons.

13         First, the cases cited by Plaintiffs do not actually support their assertion that Ninth Circuit

14   precedent establishes that unilateral reservations of the right to change contract terms makes such

15   contracts illusory, and thus per se invalid.  Plaintiffs' argument on this issue largely rests on

16   *Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 997-99 (9th Cir. 2010) and *Ingle v. Circuit City Stores,*

17   *Inc.,* 328 F.3d 1165, 1179 (9th Cir. 2003).[6]  However, in these cases, the Ninth Circuit simply

18

19   [5] Plaintiffs do not dispute that they accepted the arbitration agreement that was part of the Prime
20   T&Cs and the Amazon COU numerous times after August 2011, through both Dr. Ekin's and
     Ms. Burke's myriad active purchases and renewals (active in Dr. Ekin's case) of their Prime
21   memberships, nor could they, given this District's recognition of the Ninth Circuit rule that
     similar "clickwrap" agreements are completely enforceable.  *See e.g.*, *Peters v. Amazon Services,*
22   *LLC,* 2 F. Supp. 3d 1165, 1170 (W.D. Wash., Nov. 5, 2013).  For this reason, the Court finds
     inapplicable to this case Plaintiffs' references to the fact that the FAA does not require
23   compliance with arbitration arguments to which there was not mutual assent, *see* Plaintiffs'
     Response, Dkt. No. 38 at Section III(A).
24   [6] Plaintiff cites other authorities in support of this proposition, but they are not binding on this
     Court.  However, these non-binding authorities are not, on the whole, even persuasive because
25   they may all be distinguished from the present suit on several salient points.  For instance, in *In*
     *re Zappos.com, Inc.,* 893 F. Supp. 2d 1058, 1063 (D. Nev. 2012), which features very
26   prominently in Plaintiffs' briefing, the unenforceable arbitration agreement was forced on those

1   included the presence of a unilateral change-in-terms provision to be *one of several factors*

2   supporting a finding of unconscionability and thus unenforceability.  For instance, in *Ingle,* the

3   Ninth Circuit found an *employment* arbitration agreement unenforceable on numerous grounds,

4   including that it was one-sided (employer claims against employees were not subject to the

5   agreement), it contained a loser-pays provision, and it precluded several types of relief that

6   would be available in court, *in addition to* the fact that it allowed Circuit City to unilaterally

7   modify the arbitration agreement.  328 F.3d at 1174-79.  The *Ingle* court "dr[ew] no conclusion

8   as to whether [the change-of-terms provision], by itself, renders the contract unenforceable."  *Id.*

9   at 1179 fn. 23.  Similarly, in *Pokorny,* the Ninth Circuit found an agreement between a

10  corporation and its distributors to be unenforceable for several reasons, such as the inclusion of a

11  "first-peak" at claims provision, a truncated limitations period, mandatory confidentiality, fee-

12  shifting provisions, and even a provision giving preference to arbitrators that had been trained by

13  the defendant corporation itself, *in addition to* a provision reserving the right to change the terms

14  of the agreement.  601 F.3d at 998-1004.  As Defendant points out, "neither Washington courts

15  nor the Ninth Circuit have ever held an arbitration agreement unenforceable solely because it is

16  in a contract that allows changes.  To rule otherwise would be to invalidate countless arbitration

17  agreements across the country."  (Defendant's Reply, Dkt. No. 41 at 1.)

18      Further, Washington and Ninth Circuit courts have a history of enforcing contracts

19  containing change-in-terms provisions.  *See e.g., Alaska Airlines, Inc. v. Carey,* 395 F. Appx.

20  476, 479 (9th Cir. 2010) (holding that "Alaska Airline's unilateral right to modify the terms of

21  the Mileage Plan do[es] not make the plan an illusory contract").  In Washington, a contract is

22  illusory only if it lacks all consideration and mutuality of obligation, e.g., the promisor has *no*

23  obligations with regard to *any* parts of the contract.  *See e.g., Gress v. Conover Ins., Inc.,* 494 F.

24  Appx. 772, 774 (9th Cir. 2012) ("The fact that [defendant] retained the right to unilaterally

25  _____

26  plaintiffs through a "browsewrap" "agreement" which required absolutely no affirmative action
    on the part of consumers.

1  modify the contract did not render the agreement illusory, because the performance obligations

2  remained fixed."); *Quadrant Corp. v. Am. States Ins. Co.,* 154 Wash. 2d 165, 184-85 (2005)

3  (explaining that illusory contracts are those without any consideration).  This is not the case here,

4  where the contract between customers and Amazon created several performance obligations for

5  Amazon, the alleged breach of which forms the basis of this suit.  Thus, there is no binding legal

6  authority compelling a finding that the reservation of the right to change the terms makes the

7  COU/arbitration agreement unenforceable.

8      Second, in addition to the absence of any elements making the agreement per se

9  unconscionable, the arbitration agreement's terms hardly strike this Court as unfair.  For

10  instance, the arbitration agreement obliges Amazon to pay all arbitrator fees and costs for claims

11  under $10,000, to unilaterally waive its claims for attorneys' fees, to submit to arbitration in any

12  location chosen by the consumer, and also allows consumers to arbitrate by telephone or written

13  submission.  (*See* Motion to Compel Arbitration, Dkt. No. 24 at 5-6.)  Arbitration is conducted

14  not according to some rules created by Amazon, but rather by the American Arbitration

15  Association's published and accessible rules.  The external, neutral American Arbitration

16  Association's arbitrators preside over the arbitration.

17      Third, this agreement misconstrues Defendant's demand for arbitration.  Defendant is not

18  arguing that the pre-August 2011 COU to which Plaintiffs agreed have been *changed* to include

19  the arbitration agreement.  Rather, Amazon argues that the *post*-August 2011 COU to which

20  Plaintiffs agreed on numerous occasions, and which *have featured arbitration agreements from*

21  *their inception,* bind Plaintiffs.[7]  By arguing thus, Defendant renders its ability to change extant

22

23

24  [7] "Amazon did not change either agreement to impose arbitration on Plaintiffs or to change the
    terms of arbitration.  Rather, Plaintiffs agreed to arbitration each time they accepted the COU

25  anew – more than 300 times in all."  (Defendant's Reply, Dkt. No. 41 at 1.)  Plaintiffs' arguments
    that there was no affirmative agreement to arbitrate (*id.* at Section III(A)) are not well-founded,

26  given that Plaintiffs offer no theory for rejecting Amazon's assertion that Plaintiffs accepted the
    arbitration agreement every time they made a purchase subsequent to August 2011.

COU without notice irrelevant, as the COU upon which Amazon's Motion is based *were* presented to and agreed to by both Plaintiffs, each and every time they made a purchase after August 2011.[8]

The fact that Amazon did not, in fact, use its allegedly-unfettered power to change the terms to "alter[] the dispute resolution process after a dispute, or potential dispute, has arisen," (Plaintiffs' Response, Dkt. No. 38 at 15), renders Plaintiffs' remaining validity arguments irrelevant. Plaintiffs' lack-of-savings-clause argument (*id.* at Section III(C)(3)) is moot. Further, as Amazon points out, such reservation of terms-changing rights is in fact "fettered" and restricted by the universal requirements of good faith and fair dealing. Plaintiff's failure to provide notice of a change of terms argument (*id.* at Section III(C)(4)) is likewise moot, at the point that Amazon is basing its Motion on the *unchanged* COU to which Dr. Ekin assented after August 2011. The failure of Plaintiffs' arguments along these lines is supported by this District's decision in *L.A. Fitness International, LLC v. Harding,* in which Judge Bryan rejected the similar claims of those plaintiffs and held that when a defendant seeks to enforce an arbitration agreement that has not been changed, a challenge on the basis of unconscionability due to change-in-terms provisions is irrelevant, because the never-invoked change-in-terms provision can be severed, allowing the rest of the contract and agreement to stand. 2009 WL 4545079 at *4 (W.D. Wash., Nov. 25, 2009). Finally, the fact that Amazon bases its Motion on the COU to which Dr. Ekin affirmatively assented discredits Plaintiffs' argument that Amazon did not secure meaningful consent. (*See* Plaintiffs' Response, Dkt. No 38 at 22.)

Plaintiffs' alternate argument against the validity of the arbitration agreement is that Amazon's failure to attach and specify the relevant arbitration rules makes the agreement unenforceable for ambiguity. (Plaintiffs' Response, Dkt. No. 38 at 18-20.) However, the Court

---

[8] In doing so, Defendant implicates questions of the scope of the post-August 2011 agreement and its ability to cover pre-August 2011 transactions. However, this Court finds that Amazon fulfills the second prong *Chiron* inquiry as well, for the reasons discussed in the ensuing section.

1  fails to see how Amazon's reference to the AAA's rules is at all ambiguous.  The arbitration

2  agreement provides that "[t]he arbitration will be conducted by the American Arbitration

3  Association (AAA) under its rules, including the AAA's Supplementary Procedures for

4  Consumer-Related Disputes."  (Ressmeyer Decl., Dkt. No. 25, Ex. E at 24.)  The agreement

5  provides the AAA's website and a toll-free telephone number, so that customers may obtain the

6  governing rules.  (*Id.*)  Plaintiffs' description of the convolution, disorganization, and obstacles

7  endemic to the AAA's website are not convincing.

8         Thus, Plaintiffs have presented this Court with no reasons for holding the arbitration

9  agreement invalid.

10         **C.     The Scope of Amazon's Arbitration Agreement**

11         Amazon's arbitration agreement encompasses "any dispute or claim relating in any way

12  to your use of any Amazon Service, or to any products or services sold or distributed by Amazon

13  or through Amazon.com."  (Ressmeyer Decl., Dkt. No. 25, Ex. E at 24.)  Plaintiffs do not

14  meaningfully contest that this phrasing encompasses disputes arising from both future *and past*

15  transactions on Amazon.com.  Nor could they, consistently, given the prevailing law.  As

16  Defendant points out, Chief Judge Pechman of the Western District of Washington held one year

17  ago that a similarly worded arbitration provision of Amazon was "plainly not limited to

18  prospective disputes."  *Peters,* 2013 WL 7872692 at *7.  This District's ruling is amply

19  supported by Ninth Circuit precedent[9] and the decisions of sister circuits holding specifically that

20  when arbitration agreements contain broad "relating to any dispute" language, both future and

21  past disputes are included in the scope of the arbitration agreement.[10]

22

23

24  [9] *See e.g., Chiron Corp.*, 207 F.3d at 1131 ("any dispute" provisions are "broad and far reaching"
   in scope).

25  [10] *See e.g., Levin v. Alms & Assoc., Inc.*, 634 F.3d 260, 267-68 (4th Cir. 2011) ("[C]ourts
   have generally applied broad 'any dispute' language retroactively, especially when combined

26  with language that refers to all dealings between the parties."); *TradeComet.com, LLC v.
   Google, Inc.,* 435 F. Appx. 31, 34-35 (2d Cir. 2011) ("[C]ourts have found claims arising

1    Thus, the instant Prime-FBA price dispute, even though stemming from transactions

2    occurring prior to August 2011, is within the scope of the post-August 2011 arbitration

3    agreement that this Court found valid in the preceding section, and to which Plaintiffs agreed.

4    The arbitration agreement having fulfilled both prongs of the *Chiron* test, this Court must

5    conclude that arbitration is mandated.

6    **III.    CONCLUSION**

7    For the foregoing reasons, Defendant's Motion to Compel Arbitration (Dkt. No. 24) is

8    GRANTED.  The parties are directed to submit their claims to arbitration.  In light of this Order,

9    Amazon's Motions to Dismiss (Dkt. No. 23 & 27) are stricken as moot.

10    DATED this 10th day of December 2014.

15    John C Coughenour

16    John C. Coughenour

17    UNITED STATES DISTRICT JUDGE

23    from or related to conduct occurring before the effective date of an arbitration clause to be

24    *within* the scope of a clause that is not limited to claims arising under the agreement itself.");

25    *Kristian v. Comcast Corp.*, 446 F.3d 25, 33 (1st Cir. 2006) (arbitration agreement applying

     to any claims "relating to or arising out of this agreement or the services provided" was

26    applied retroactively because "the phrase 'or the services provided' … [is] not limited by the

     time frame of the agreements").

ORDER GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION
PAGE - 10